# Brainard v. The Merchants and Manufacturers National Bank of Sharon

*Albert E. Acker*, for plaintiff.
*David Goodwin*, for defendant.

McKAY, J., April 29, 1965.—In this action in orphans' court, plaintiff, Dorothy M. Brainard, demands judgment against defendant in the amount of $15,390 as reimbursement of moneys expended by her for the support and maintenance of her children. It is her position that defendant bank, the Merchants and Manufacturers National Bank of Sharon, Pa., which was the executor of, and also the trustee under, the will of plaintiff's deceased husband, George L. Brainard, has

failed to comply with its duty under the will to provide such support and maintenance. The case comes before the court at this stage on a motion of defendant bank for judgment on the pleadings.

The pleadings consists of the complaint, answer containing new matter, reply and the motion for judgment.

The facts thus presented are substantially as follows:

On March 14, 1959, George L. Brainard died testate, leaving to survive him his widow, Dorothy M. Brainard, and three children, Lewis R., age 21; Elaine C., age 15; and Sandra J., age 10. His last will and testamen was executed November 27, 1946, and a codicil was added to it on December 26, 1957. The bank was named as executor and trustee in both the will and the codicil.

At the time of decedent's death, the principal asset of the estate was a Chrysler sales agency known as Brainard's Motor Sales and Service Company. The will, as modified by the codicil, made provision for the operation of that business by the executor and trustee until decedent's son, Lewis, should become 28, at which time it was contemplated that it should be turned over to him, but it also empowered the bank as executor and also as trustee to sell the business and any real estate or other property of decedent at any time.

On or about August 10, 1959, the business was sold by the bank as executor to Molnar Motors, Inc., and a lease executed for the real estate owned incidentally to the business for $925 per month for two years. The lease has been continued and is now held by a successor corporation, Sharon Chrysler-Plymouth, Inc., at that rental.

Both the will and the codicil made provision for the support of decedent's wife, Dorothy M. Brainard, and his children, but the codicil increased the amounts spe-

cified in the will. Paragraph 8 of the codicil provides that, in the event the business be sold, ". . . the trustee shall distribute the income and principal of the entire trust fund as follows: To my beloved wife, Dorothy M. Brainard, Five Hundred ($500.00) Dollars per month or one-third (⅓) of the monthly income, whichever be the larger amount, for and during her natural life; to or for my beloved children, Lewis R. Brainard, Elaine C. Brainard and Sandra Jane Brainard, such amounts of the monthly income as in the trustee's discretion it shall think proper, for the maintenance, education and benefit of said children . . ."

Paragraph 5 of the original will contained a trust paragraph 9 which was not affected by the codicil and which read as follows:

"The trustee in the exercise of its discretion, in making the aforesaid annual distribution of net profits or income to my wife and my children for their maintenance, comfort and general welfare, and for the education of my said children, may make such payments, or parts thereof from principal, when, in the discretion of the trustee, the respective shares of the net profits or income are insufficient for the purposes stated, but the necessity and propriety of such payments of principal, and the amount thereof, shall be solely determined by the trustee and its determination shall be final."

This will further provided that upon the death of the wife, the trustee was to divide the principal of the trust and any undistributed net income in three equal parts among the three children upon Lewis becoming 28 years of age. Hence, the three children are the ultimate beneficiaries of any remaining principal of the trust.

Defendant bank has paid Dorothy M. Brainard $500 per month beginning the day after decedent's death and continuing to the present time, but has re-

fused to pay her any additional amount whatever to provide for the maintenance of decedent's children. However, it has paid $4,536 toward the expenses of the college education of Elaine C. and $5,280 toward the college education of Lewis R.

On July 21, 1962, the bank filed its account as executor which was confirmed absolutely on September 21, 1962, and an order of distribution was made by the court on September 26, 1962, distributing the balance of the assets to the bank as trustee. The assets of the trust on October 22, 1964, were $140,991.98 which includes $33,966.26 of United States bonds. The principal income-producing asset is the rentals from the lease of $925 per month, which lease expires January 31, 1966. The real estate taxes amount to $3,213.22 per year. The bank, as trustee, has invaded the principal of the trust account substantially, having disbursed $12,383.90 more than income up to October 22, 1964.

As stated above, plaintiff now claims that the bank should reimburse her for a total of $15,390 for moneys expended by her in the support and maintenance of the three children since decedent's death. While in its answer defendant demanded proof of these alleged expenditures, by its present motion it challenges the right of plaintiff to receive any reimbursement at all.

It is the position of plaintiff that under paragraph 8 of the codicil construed along with paragraph 5 of the trust paragraph 9 of the original will, the bank is required to distribute for the maintenance and support of the children a reasonable amount over and above the $500 per month which it has paid to plaintiff for her own support; and that if the income of the estate is not sufficient for that purpose, it is required to use some of the principal for that purpose, the exact amount to depend upon the trustee's discretion, but that the trustee does not have the discretionary right to refuse to pay anything at all for the children's sup-

port and maintenance as it has done, except for college expenses above referred to.

The bank contends, on the other hand, that the discretionary power contained in the said paragraphs is so broad that it has the right in the exercise of its discretion to refuse to pay anything whatever for the support of the children and that it has properly exercised this discretion, particularly in view of the fact that it has already substantially invaded the principal of the trust estate.

In view of the broad discretionary power given to the bank under this will, it is understandable that the bank hesitates to invade the principal fund further without the protection of a court decision.

It will be noted that while paragraph 8 of the codicil provides that the bank shall distribute for the children only "such amounts of the monthly *income* as in the trustee's sole discretion it shall think proper", paragraph 5 of trust paragraph 9 authorizes the trustee to make such payments from principal when in its discretion the income is insufficient.

It is true that the latter paragraph also provides "but the necessity and propriety of such payments of principal, and the amount thereof, shall be solely determined by the trustee and its determination shall be final". But the clauses in question, as well as the will as a whole, make it clear that testator intended the wife to receive $500 per month for herself alone, *over and above the amount required for the support of the children*. This is made abundantly clear by paragraph 6 of the codicil wherein testator increases the amount which he had left in his original will to his wife of $3,600 to $6,000 per year and states as his reason, "I do this so that there is reasonable assurance that my beloved wife, Dorothy M. Brainard, will regularly receive sufficient money with which to maintain the standard of living to which she has been accustomed".

It is obvious that if plaintiff must devote a substantial portion of her $500 per month for the support and maintenance of three children, 21, 15 and 10 years of age, respectively, or even merely the latter two, the amount left for her own purposes would not permit her to maintain her accustomed standard of living, the cost of which testator has himself established at $500 per month.

It follows that the discretion given to the bank as to how much it should distribute for the support, maintenance and benefit of the children, broad as it is, is not broad enough to permit the bank to refuse to pay any amount whatever for that purpose other than the educational payments above mentioned.

The question next arises whether the court can do anything about the bank's failure to pay for the maintenance of the children. Of course, a court cannot control the discretion conferred upon a trustee. However, it may compel him to exercise it in good faith and within the bounds of a reasonable judgment, and it may also interpose where he fails to use his judgment at all because of a mistaken view, either of fact or law, as to the extent of his powers or duties: Brown's Appeal, 345 Pa. 373, at page 379.

The exercise of even the broadest discretionary power lodged in a trustee by a testator is not immune from court review. In Swinson Estate, 167 Pa. Superior Ct. 293, at page 299, the court stated:

"The discretion lodged in the trustee was a legal one and subject to the supervisory power of the courts. It was therefore competent for a court of equity to compel a proper exercise of that discretion and decree a reasonable amount as necessary for the support of the beneficiary."

See also Forrish v. Kennedy, 377 Pa. 370, where the court stated at page 376: "While we cannot subscribe to appellant's argument that the words 'full authority'

are synonymous with the terms 'absolute discretion' or 'unlimited discretion,' even such terms do not give a trustee unfettered discretion in all instances. Resort must be had to the instrument itself to define the limits of a trustee's powers, for much will depend on whether there is any standard by which the trustee's conduct can be judged. Scott on Trusts, Vol. 2, §187".

Applying these principles to the instant case, we are of the opinion that by his will and codicil testator intended that not only the bank should pay to plaintiff a reasonable amount for the support of the children, but that its discretion has been abused when it refused to pay anything at all, and that the court has the power to remedy this abuse.

The bank also contends that there was no duty on its part to pay out any money for the support, maintenance and benefit of decedent's children until it assumed the role of trustee, an argument which implies that the distribution to the trustee ordered by the court after the confirmation of the bank's account as executor and the absence of exceptions by plaintiff to the executor's account limits plaintiff's right to recover to merely the amounts expended by her after the bank became trustee.

This contention is without merit. The bank sold the automobile business and made many of the disbursements for the education of two of the children while it was still executor, prior to achieving the status of trustee, and thereby recognized what the law recognizes, that the office of the same individual as executor of and trustee under a will is a continuing one.

For the above reasons, we conclude that the motion for judgment on the pleadings in favor of defendant must be overruled. It does not follow, however, that the bank is required to pay the widow the exact amount she has expended. It is for the bank to determine how much is reasonably necessary for the specified pur-

poses, subject to court review as to whether it has abused its discretion. In the present state of the record, however, the case will have to be tried so that the jury may determine whether plaintiff made the expenditures claimed and how much of the expenditures are reasonable under all of the circumstances, unless the parties meanwhile agree upon the amount due.

## ORDER

And now, April 29, 1965, it is ordered that defendant's motion for judgment on the pleadings in the above-entitled case is overruled.

## EXCEPTION

And now, April 29, 1965, defendants except to the foregoing order and an exception is granted.